**UNITED STATES of America**
v.
**MEEMS BROTHERS & WARD,**
**Defendants.**

United States District Court
S. D. New York.
July 25, 1961.

Robert M. Morgenthau, U. S. Atty., for S. D. New York, New York City, for the United States. Robert E. Scher, Asst. U. S. Atty., New York City, of counsel.

Homer H. Breland, Nyack, N. Y., for defendants.

DIMOCK, District Judge.

The Government moves for summary judgment in the amount of $3,057.39, being the excess cost of certain rhesus monkeys which defendant had contracted to supply to the Government and had failed to deliver. As a basis for proceeding by motion for summary judgment rather than going to trial, the Government relies on the determination of the Armed Services Board of Contract Appeals in the appeal of Meems Bros. & Ward, ASBCA No. 3982, under contract No. DA-18-108-CML-5678, dated January 4, 1955. There the Board denied an appeal from the determination of the Army Chemical Center Procurement Agency, Army Chemical Center, Maryland, dated October 30, 1956, which, among other things, held defendant liable to reimburse the Government in the sum of $3,057.39 because of defendant's failure to deliver the full quantity of monkeys called for by said contract. The Government asserts that it is entitled to limit consideration to the record before the Board and that the decision of the Board may not be disturbed unless unsupported by substantial evidence. The Government concedes, however, that questions of law are still open.

Defendant contends that the Board erred on a question of law in rejecting defendant's contention that its failure to perform was excused by General Provision 11(b) of the contract which reads as follows:

"The Contractor shall not be liable for any excess costs, if any failure to perform the contract arises out of causes beyond the control and without the fault or negligence of the Contractor. Such causes include, but are not restricted to, acts of God or of the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and defaults of subcontractors due to any of such causes unless the Contracting Officer shall determine that the supplies or services to be furnished by the subcontractor were obtainable from other sources in sufficient time to permit the Contractor to meet the required delivery schedule."

Defendant's specific point is that its failure completely to perform arose out of a freight embargo on the shipment of monkeys from India and was thus excused by the express terms of the contract. As a matter of fact, the embargo was complete for only a short time and thereafter it was limited to ocean shipment of monkeys. Defendant is faced at the outset therefore with a state of affairs where the embargo on which it relies would have permitted the shipment of the monkeys by air.

Shortly after the contract was executed trouble arose because of the suffocation of a truck load of monkeys in London. The reaction to this in India was such that, in March 1955, the Indian Government placed an embargo on the export of all monkeys. The embargo continued until August 1955, when the United States Government and the Indian Government reached an understanding as to the basis of further exportation of monkeys from India to the United States.

Besides requiring special certificates of need, this arrangement provided that all future shipments of monkeys be made by air.

There was testimony on behalf of defendant, which the Board seems to have accepted, that ocean shipment of monkeys costs from $2 to $3 per unit while air shipment costs ten times as much and that the unit delivered cost to defendant would be about $50 in contrast to the figure of $22, for which it had agreed to deliver the animals.[1] As pointed out by the Board, the fact that the Government was forced to pay $59.75 per unit to obtain the monkeys which defendant had agreed to furnish is in keeping with defendant's testimony.

The Armed Services Board of Contract Appeals took the straightforward position that the limitation of the shipment of monkeys to air transport did not constitute an embargo but merely was an increase in freight rates.

That was in my opinion error of law.

The Governmental ruling closing ocean commerce to shipments of monkeys was certainly an embargo. The failure of defendant to perform the contract arose out of the embargo within the terms of General Provision 11(b) of the contract. If air transport had been available at the same rate as ocean transport, it might be said that the failure to perform the contract did not arise out of the embargo on ocean transport. Here, however, where the use of air transport would have cost ten times as much as ocean transport and would have burdened defendant with a delivered cost amounting to more than twice as much as the contract price, one cannot say that failure to perform did not arise out of the ocean transport embargo.

The Government's motion for summary judgment is denied and summary judgment is awarded defendant dismissing the complaint.

---

1. Although the increased unit delivered cost may well have been caused in part by the greater demand for rhesus monkeys, it appears by simple arithmetical calculation that the cost of air transportation would equal or exceed the contract price for the monkeys.